IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHRISTINA GROSS** * | |
| a/k/a Aurora Moon * | |
| v. * | Civil Case No. WDQ-13-1274 |
| * | |
| **COMMISSIONER, SOCIAL SECURITY** * | |
| * | |

*************

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014–01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). Ms. Gross,[1] who appears *pro se*, has filed a motion for summary judgment. [ECF Nos. 17, 26]. I have considered her motion and the Commissioner's pending motion for summary judgment.[2] [ECF No. 24]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that both motions be denied, and the case be remanded for further proceedings in accordance with this report and recommendations.

Ms. Gross's case has been beset by administrative rigmarole, including three ALJ decisions and a lost file that was subsequently reconstructed, resulting in delays lasting many

---

[1] The Claimant was born as Scott Murphy and in 2001 legally changed her name to Christina Elizabeth Gross. *See* (Tr. 93–94, 111). Recently, the claimant changed her name to Aurora Moon. (Tr. 94, 111). In her filings with the Court, the Plaintiff has provided both Christina Gross and Aurora Moon as her legal names. For ease of reference, the Court will refer to the Claimant as Christina Gross.

[2] The Court sent Ms. Gross a Rule 12/56 letter on June 12, 2014, explaining the potential consequences of failing to file an opposition to the Commissioner's motion. [ECF No. 25].

years.  Ms. Gross filed her claims for Disability Insurance Benefits ("DIB") and Child's Insurance Benefits ("CIB") on November 12, 1998, alleging a disability onset of September 1, 1984.  (Tr. 13, 53).  On April 17, 2000, an Administrative Law Judge ("ALJ") issued an unfavorable decision. (Tr. 113).  Three years later, on May 9, 2003, the Appeals Council granted Ms. Gross's request for review and vacated the ALJ's decision because the Appeals Council could not locate Ms. Gross's file.  *Id.*  A separate hearing was held approximately six years later on February 19, 2009.  (Tr. 313–49).  Following the hearing, on April 24, 2009, the ALJ again issued a decision denying benefits.  (Tr. 39–49).  The Appeals Council again granted Ms. Gross's request for review, vacated the ALJ's decision, and remanded her case to the ALJ.  (Tr. 52–54).  A third hearing was held on July 17, 2012.  (Tr. 350–81).  The Appeals Council denied Ms. Gross's request for review of her DIB claim, *see* (Tr. 6–9), but granted her request for review of the CIB claim.  (Tr. 294–97).  The Appeals Council subsequently concluded that Ms. Gross was not disabled during the relevant time frame, and denied CIB benefits.  (Tr. 13–15).  Thus, the ALJ's July 17, 2012 decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Gross suffered from the severe impairments of gender identification disorder and depression. (Tr. 28).  Despite these impairments, the ALJ determined that Ms. Gross retained the residual functional capacity to "perform a full range of work at all exertional levels but with the following nonexertional limitations: capable of simple/routine tasks; should not involve more than occasional contact with supervisors, co-workers, or the public; and deal with things rather than people."  (Tr. 31).  After considering the testimony from a vocational expert ("VE"), the ALJ determined that Ms. Gross was capable of performing jobs that exist in significant numbers in the national economy, and that she was therefore not disabled. (Tr. 34–35).

Ms. Gross argues that she has been disabled from birth due to hermaphroditism, and that she has suffered lifelong depression, which has prevented her from holding down a job.[3] [ECF No. 26 at 4]. She expresses frustration at the agency for allegedly losing her file three separate times, resulting in a "neglectfully" reconstructed file with "missing documents and medical history, inaccurate dates of disabilities and medical care, and a skewed unreliable file as to all the facts of [her] lifelong disabilities from birth up to the present…" [ECF No. 26 at 3, 5]. In addition to these general arguments, Ms. Gross reasserts the arguments that her former attorney made to the Appeals Council. Those arguments are: (1) that the ALJ's decision inadequately considered the disability determination of the Veteran's Administration ("VA"); and (2) that she meets the criteria of Listings 12.04 and 12.06 because she is markedly limited in all functional areas and has experienced repeated episodes of decompensation. *See* [ECF No. 17-2]. In light of the Fourth Circuit decision in *Bird v. Commissioner of Social Security Administration*, 699 F.3d 337 (4th Cir. 2012), which was decided after the ALJ's 2012 decision, I recommend remand so that the Commissioner may consider the VA's disability finding under the new standard.

Before addressing the merits of Ms. Gross's arguments, I note that the relevant period during which Ms. Gross must establish disability is short. To be entitled to CIB, Ms. Gross must prove that she has been under a disability which began before November 21, 1984, the day she turned 22. *See* 42 U.S.C. § 402(d)(1). In order to be eligible for DIB, Ms. Gross must establish that she has been disabled between her alleged onset date — September 1, 1984, and her date last insured ("DLI") — September 30, 1985. *See* (Tr. 26). Ms. Gross's efforts to prove disability are

---

[3] Ms. Gross asks the Court to award her one million dollars consisting, in part, of damages for pain and suffering. However, this Court's review is limited to whether the Commissioner's decision to deny her disability benefits is supported by substantial evidence. *See* 42 U.S.C. § 405(g). Thus, the Court does not have the authority to grant the sort of financial compensation that Ms. Gross seeks. *See Id.*; §§ 402(d), 423(a).

stymied somewhat by the absence of some of her medical records from her childhood, which disappeared when the agency lost her file.

Ms. Gross argues that the ALJ's discussion of the VA's finding that Ms. Gross is permanently incapable of self-support is inadequate. She contends that the ALJ's reason for rejecting the VA decision — that the standards utilized by the VA for disability benefits differ from the standards utilized by the Social Security Administration ("SSA") — amounts to a blanket refusal to consider any VA decision, despite its validity. [ECF No. 17-2 at 2]. Given the standard set forth in *Bird*, I agree that the ALJ's evaluation of the VA disability rating is inadequate. In *Bird*, the Fourth Circuit described the weight that the SSA must afford to a VA disability rating. The court noted that the assignment "of at least some weight" to a VA disability determination is proper because both agencies "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Bird*, 699 F.3d at 343. The court held that in making a disability determination, the precise weight that the SSA must afford to a VA disability rating is "substantial weight." However, the court noted that, because the standards used for evaluating disability claims differ between the agencies, and because the effective dates of coverage under the two programs would likely vary, "an ALJ may give less weight to a VA disability rating when the record before the ALJ *clearly demonstrates* that such deviation is appropriate." *Id.* (emphasis added). To be clear, a disability determination by another governmental agency, such as the VA, is not binding on the SSA, but it cannot be ignored. *See* 20 C.F.R. § 404.1504; SSR 06-03p, 2006 WL 2329939, at *6–7.

Here, despite a remand order from the Appeals Council directing the ALJ to "[e]xplain the consideration given to the Department of Veterans Affairs decision…", (Tr. 25), the ALJ again gave short shrift to the VA's finding. The ALJ stated that the VA records demonstrated

"conflicting evidence, with one report showing a year of college and another stating the claimant cannot work." (Tr. 33). The ALJ then stated that he assigned the VA opinion "little weight" because "the standards utilized for VA benefits and other types of disability claims differ from the standards imposed by Social Security statutes, regulations, and rules." *Id.* The ALJ concluded his analysis by noting that the treatment record prior to September 20, 1985 indicated that Ms. Gross's depression symptoms "remained stable with treatment." *Id.* at 34.

Nothing in the ALJ's analysis "clearly demonstrates" that deviation from the substantial weight standard articulated in *Bird* is appropriate. 699 F.3d at 343. It appears that the "conflicting" VA evidence to which the ALJ cited is an inter-office memo, dated July 13, 1993, from an unidentified author who recommended that the VA obtain an expert medical opinion to determine at what age Ms. Gross became helpless. (Tr. 143). The memo points out that hermaphroditism does not, by itself, make a person helpless, and that Ms. Gross's claim is "debatable" because "one report shows a year of college [and] [a]nother says she can't work." *Id.* Tellingly, approximately two weeks later, on July 29, 1993, the VA determined that Ms. Gross was entitled to helpless child benefits. (Tr. 142). The decision stated that Ms. Gross "became permanently incapable of self-support prior to 11/21/80 by reason of physical or mental disability diagnosed major depression with physical gender disorder." *Id*. Presumably, in declaring Ms. Gross permanently incapable of self-support and entitled to helpless child benefits, the VA resolved the debate concerning disability in her favor, with the benefit of a complete file of medical records.

I also do not agree with the ALJ's statement that the treatment record prior to September 20, 1985 indicated that Ms. Gross's depression was "stable with treatment." *See* (Tr. 33).[4]

---

[4] It is unclear what import the date September 20, 1985 carries. The ALJ stated that Ms. Gross's date last insured is September 30, 1985. *See* (Tr. 28, 35).

Significantly, Ms. Gross attempted suicide in April, 1984. (Tr. 209, 291). Several records demonstrate that Ms. Gross's mental impairment was severe and ongoing, and that medication did not fully resolve her depression. *See* (Tr. 176) (March, 1983 treatment summary recommending intensive psychotherapy for "moderately severe mental disorder"); (Tr. 191–94) (inpatient hospitalization record noting major depressive disorder and poor response to therapy); (Tr. 197) (October 17, 1983 in-patient progress note prescribing anti-depressant); (Tr. 200) (October 21, 1983 progress note describing fluctuating mood and continued depression); (Tr. 205) (examination note noting antidepressant was effective in helping to relieve some symptoms); (Tr. 207–10) (September, 1984 treatment note diagnosing history of major, recurrent depression). Furthermore, medical records post-dating Ms. Gross's DLI demonstrate persistent suicidal thoughts and attempts. *See* (Tr. 223–26) (hospital admission note for suicide attempt in March, 1988); (Tr. 231–32) (February, 1992 hospital admission for suicidal thoughts).

The ALJ also reasoned that the VA disability decision deserved little weight because of the differences between VA and SSA standards for awarding disability benefits. While the *Bird* court explained that differences between SSA and VA standards for evaluating disability might merit an assignment of less than substantial weight to a VA disability finding, those differences are not material here, for several reasons. First, while the standard for awarding helpless child benefits differs from the SSA's disability standards, the VA standard can potentially be viewed as more rigorous, requiring the child of a veteran to "establish permanent incapacity as of his eighteenth birthday." *Barraquias v. Peake*, 301 F. App'x 947, 948 (Fed. Cir. 2008); *see also* 38 C.F.R. § 3.356; (Tr. 143) (VA inter-agency memo stating that to be entitled to benefits Ms. Gross must prove that she is both helpless and disabled). Both agencies must rely on objective medical evidence to support a finding of disability. The VA decision states that Dr. Fred A. Dittmer

conducted an examination of Ms. Gross on November 10, 1979, and that the disability decision was supported by evidence of record. (Tr. 142). Second, here, as in *Bird*, the VA rating decision reached in Ms. Gross's case resulted from an evaluation of the same conditions that she alleged before the SSA. *Bird*, 699 F.3d at 343. The VA noted that an examination revealed that Ms. Gross is "pseudo-hermaphrodite, partial mixed with incomplete male/female genitalia." (Tr. 142). The decision also noted diagnoses of major depression and physical gender disorder — two impairments that Ms. Gross alleged before the agency, and two impairments that the ALJ deemed severe. (Tr. 28).

Other courts interpreting *Bird* have remanded cases to the SSA for further explanation where the ALJ assigned less than substantial weight to a claimant's favorable VA disability rating. *See Wood v. Colvin*, 9:12-3570-MGL, 2014 WL 607707, at *4 (D.S.C. Feb. 18, 2014) ("The reasons outlined by the ALJ for giving the VA disability rating 'differential' weight may have been sufficient before *Bird*. However, the Court is unable to discern…whether or not the ALJ's discussion…'clearly demonstrates' that deviation from the VA disability ratings was appropriate."); *Cobbs v. Colvin*, 1:12-cv-03472-JMC, 2014 WL 468928, at *7–9 (D.S.C. Feb. 4, 2014) (remanding for greater explanation where claimant received 70% VA disability rating for PTSD and 100% disability rating for prostate cancer); *Wyche v. Colvin*, 4:13cv43, 2014 WL 1903106, at *9–10 (E.D. Va. Apr. 30, 2014) (remanding where claimant received 100% disability rating for PTSD and noting that "the ALJ must give the VA's disability determination 'substantial weight.' If the opinion does not, then it must be evident from the opinion itself why the ALJ departed from that standard."); *Salazar v. Colvin*, 1:10cv972, 2014 WL 486726, at *5–7 (M.D.N.C. Feb. 6, 2014) (citing cases and remanding where claimant received 100% disability rating from VA). I am unable to conclude that the ALJ's analysis is supported by substantial

evidence, in light of the new standard set forth in *Bird*. Accordingly, I recommend remand for further consideration of Ms. Gross's VA disability determination. I note that Ms. Gross's case is unique because the agency lost some of her early childhood records. Thus, it may be difficult for the ALJ to find and evaluate the evidence upon which the VA relied. However, some early records are available. (Tr. 169, 173–75, 185–87, 228). In recommending remand, I make no determination as to whether the ALJ's conclusion that Ms. Gross is not disabled is or is not correct.

Next, Ms. Gross argues that the ALJ should have concluded that she met the requirements of Listings 12.04 and 12.06. [ECF No. 17-2 at 2]. While there is an array of medical evidence supporting Ms. Gross's claims of disability, it is not the role of this Court to weigh conflicting evidence, determine credibility, or substitute its judgment for that of the Commissioner. I have determined that the ALJ's evaluation of the Listings rests on substantial evidence. The ALJ concluded that Ms. Gross had mild restrictions in activities of daily living. (Tr. 30). In support, the ALJ cited to evidence that Ms. Gross has lived on her own, traveled back and forth to Texas, and has attended classes at a religious school, and at Go-Getters, a program for individuals with mental and physical disabilities. *Id.* In addition, the ALJ noted that Ms. Gross reported to the VA in 1998 that she enjoyed riding bicycles, babysitting, and volunteering for the VA. *Id.* (citing Tr. 281). With respect to social functioning, the ALJ summarized the hearing testimony in which Ms. Gross stated that she had conflicts with her parents, and that she had difficulties fitting in at school. (Tr. 30). However, Ms. Gross has some friends through support groups, and she testified to having a close male friend who supported her while she lived in Texas. (Tr. 339–40, 363). Ms. Gross also testified that her concentration problems resulted in several layoffs, *see* (Tr. 358–60, 363–64), however, the ALJ noted that on

examination, Mr. Gross's memory was intact, and that she was "quite knowledgeable." (Tr. 30) (citing Tr. 193).

The ALJ's conclusion that the "paragraph C" criteria were not met is similarly supported by substantial evidence. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06. Ms. Gross testified to living under the care of family members, friends, and organizations like Go-Getters. However, as noted above, the ALJ cited evidence demonstrating that Ms. Gross has lived on her own at times, away from family. Thus, the ALJ did not conclude that Ms. Gross was unable to "function independently outside a highly supporting living arrangement," or unable to "function independently outside the area of one's home." I find no error with the ALJ's analysis of the Listings. Therefore, remand on this argument is not warranted, although failure to meet the Listings is not ultimately determinative of disability.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment (ECF No. 24);

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF Nos. 17, 26); and

3. the Court order the Clerk to REMAND the case to the Commissioner for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated: July 22, 2014                              /s/
                                                               Stephanie A. Gallagher
                                                               United States Magistrate Judge